IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
01/12/2012

IN RE                          )
TIEN SHAN, INC.,               )    CASE NO. 11-37546-H3-11
                               )
        Debtor                 )
                               )

MEMORANDUM OPINION

The court heard "Petroleum Wholesale, LP and Sun Development, LP's Motion For Relief From The Automatic Stay" (Docket No. 38) and after considering the response (Docket No. 45), pleadings, evidence, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law, and will enter a separate Judgment granting the motion and lifting the automatic stay.  To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such.  To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

Findings of Fact

1.  On September 2, 2011, Tien Shan, Inc., Debtor, filed a voluntary bankruptcy petition under Chapter 11.  Docket No. 1.

2.  Petroleum Wholesale, LP and Sun Development, LP[1], Movants, seek relief from the automatic stay to enforce their rights under a promissory note in the principal amount of

---

[1] Petroleum Wholesale, LP and Sun Development, LP are affiliates.  Testimony of Daniel Miller, Director of Real Estate and Leasing for Petroleum Wholesale, LP.

$1,495,000 and a Deed of Trust secured by real property located at 3151 South Dairy Ashford, Houston, Texas 77072 (hereinafter referred to as the "Property"). Debtor operates a gas station and convenience store on the Property.

3.    On March 30, 2001, Sun Development, LP sold the Property to Craig C. Stavinoha, Inc. and Craig C. Stavinoha[2], individually, in conjunction with the execution of a Fuel Marketing Location Agreement (FMLA) between Petroleum Wholesale, LP and Craig C. Stavinoha, Inc.  Pursuant to the FMLA, all of the gas station's fuel was to be supplied by Petroleum Wholesale, LP under a consignment arrangement, for up to forty years.  On November 27, 2002 Stavinoha sold the Property to Debtor and to Debtor's sole shareholder and director, Alper T. Karaali, individually, pursuant to a Sale and Purchase Agreement, which included the assumption of the obligations under the FMLA.  On April 6, 2004, Stavinoha assigned to Sun Development, LP its interest in the sale documents (including the note, loan documents, liens, and security instruments) executed by Debtor and Karaali.  Testimony of Daniel Miller; Movants' Exhibit Nos. 1-4, 16-18.

4.    Movants' motion to lift the stay seeks relief based on cause pursuant to section 362(d)(1) because Movants lack adequate protection, and pursuant to section 362(d)(2) because there is no equity in the property and the property is not

---

[2] Hereinafter collectively referred to as "Stavinoha" unless otherwise separately designated.

necessary to an effective reorganization.  Docket No. 38.

5.    Debtor claims that this property is necessary to an effective reorganization and that equity in the property exists and exceeds Movants' interest.  Docket No. 45.

6.    No payments have been made on the note since June 2011.  Daniel Miller, Director of Real Estate and Leasing for Petroleum Wholesale, LP, testified that the outstanding principal amount owing as of December 2010 was $1,258,227.96 and the monthly payment due under the note was $11,350.47.  Miller testified that Movants advanced $39,161.44 to pay delinquent ad valorem taxes for 2010 on the Property.  Debtor has not yet reimbursed Movants for this amount and has not shown that it has the ability to do so. Movants' Exhibit Nos. 5, 6, 9 and 29.

7.    Miller testied that the approximate amount owed under the note as of December 2011 was just under $1,400,000. Movants' Exhibit No. 32.  He also testified that the amount owed will continue to increase since interest will accrue, attorney's fees and costs will be ongoing, and it will be necessary to advance approximately $40,000 to pay for the current ad valorem taxes which are now due.  Karaali testified that in addition to Movants' lien on the Property, there are two judgment liens in the approximate amounts of $6,100 and $14,100.

8.    Miller testified that on August 6, 2011 the note was accelerated and the property was posted for a foreclosure sale to be held on September 6, 2011.  Movants' Exhibit Nos. 10-12.  Debtor

filed bankruptcy on September 2, 2011 to prevent the foreclosure. Debtor leases part of the Property to a tenant to operate a used car lot and receives $4,000 per month. Movants' Exhibit No. 33. This is in violation of the terms of the FMLA. Debtor also leases restaurant space for $1,200 per month. Debtor testified that the restaurant space is not currently leased. Rent payments constitute Movants' cash collateral. Upon discovering the leases, Movants notified Debtor of the unauthorized use of cash collateral and requested an accounting. Movant's Exhibit No. 13. Other than a payment of $3,200, Debtor has not turned over any rents collected since the date of the bankruptcy filing, September 2, 2011, and has not provided an accounting. Testimony of Daniel Miller and Alper T. Karaali. The court finds that Debtor has been using Movants' cash collateral without consent or court approval and has failed to provide an accounting of the amounts received.

9. David R. Dominey, a Member of the Appraisal Institute and the Managing Director of Integra Realty Resources-Houston, testified that he has appraised all types of properties, including over 100 gas stations with convenience stores. Dominey conducted an appraisal of the Property based upon the cost approach methodology and prepared a report. Movants' Exhibit No. 15. Dominey concluded that, as of November 16, 2011, the Property had a market value of $1,000,000. Testimony of Dominey.

10. Charles C. Baranski, also a Member of the Appraisal

4

Institute, who has appraised 138 properties that have gas stations with convenience stores, testified that in October 2011 American First National Bank requested that he appraise the Property.[3] Baranski prepared a report that analyzes the value of the Property by the cost approach, income approach, and sales comparison approach. Debtor's Exhibit No. 8. He testified that the sales comparison approach was the primary methodology that he used. Baranski opined that, as of October 26, 2011, the Property had a market value of $2,100,000 based upon its current condition.

        11.    Baranski previously appraised the Property for American First National Bank and issued a report dated February 16, 2007. His initial conclusion in 2007 was that the property had a market value of $1,300,000, but after being advised by the Loan Officer that the amount did not take into account rental income from the used car lot, Baranski changed the value to $1,700,000. In preparing his 2011 appraisal, Baranski did not physically inspect the property and he used the same comparable properties as that were used in his 2007 report. Movants' Exhibit No. 23, page 100 (November 29, 2011 Oral Deposition of Baranski). Baranski testified that the increase in value in his revised 2007 report did not relate to the rental income. He testified that the revised

---

        [3]    The appraisal was requested by American First National Bank presumably because the Bank approved Karaali's loan application for refinancing the Property. Bank's Correspondence dated December 22, 2011, Docket No. 80. No refinancing has occurred as the loan is conditioned upon the termination of the FMLA and Debtor stipulated it would not terminate the FMLA.

value was due to upward adjustments he made to certain costs on the comparable properties.  Movants' Exhibit Nos. 26 and 27; Debtor's Exhibit No. 8.

12.    There is credible testimony and there are photographs that indicate that, although the location of the Property is good, the two buildings (the convenience store and car wash) and the gas station located on the Property are delapidated, as maintenance of the Property has been neglected (peeling paint on exterior of buildings, rusted gutters, torn canopy over fueling stations, inoperable lighting, and missing and/or faded signage). There are twelve fueling stations, only four of which are operational.  The fuel dispensers are outdated and the card readers are not in compliance with PCI (Payment Card Industry).  Signs were posted by Karaali on some of the fuel stations with derogatory allegations aimed at Movants and ExxonMobil.  Testimony of Miller, Dominey and Baranski; Movants' Exhibit No. 15, pages 33-37; Movants' Exhibit No. 24.

13.    The car wash is inoperable as all of the equipment has been removed from the building, and it is used for storage. The interior of the convenience store has an area for a restaurant, which is only occasionally operational.  There is open shelving in the convenience store and inventory is not full.  Testimony of Miller, Dominey and Baranski; Movants' Exhibit No. 15, pages 33-37; Movants' Exhibit No. 24.  Part of the Property is leased for the operation of a used car lot which causes the area to appear

congested and non-accessible.   Testimony of Miller and Baranski;
Movants' Exhibit No. 33.

      14.   The court has considered the appraisal reports and
testimony of both Dominey and Baranski.   The court finds that
Baranski's appraisal report is not reliable.   Baranski did not
physically inspect the Property site.   The report includes a number
of mistakes and is based upon incorrect assumptions.   Some errors
were typographical, others related to an incorrect street
designation as to the location, an incorrect reference to the
Property as residential, mistakes made on value adjustments
(references to increases when there was a decrease and vice versa),
different figures used for the number of convenience stores in the
United States.   Testimony of Baranski; Movant's Exhibit No. 23
(November 29, 2011 Oral Deposition of Baranski); Debtor's Exhibit
No. 8, pages 32, 37, 38, 41-43, 56, 62, 65, 77, 78, 79, and 80.

      15.   Baranski testified that, in applying the comparison
sales approach, he used the number of fuel stations at a given
convenience store as his unit of comparison.   On cross examination
it became clear that Baranski's calculation is based upon his
erroneous assumption that Debtor had twelve operational fuel
stations.   Since only four of Debtor's twelve fuel stations are
operable, the value of the Property using this measure would be
reduced to approximately $700,000.

      16.   The court found Dominey to be a credible witness and
notes that his report includes the underlying information used to

analyze and value the Property and includes an explanation of the reasoning upon which his opinion and conclusions are based. The court finds Dominey's appraisal to be credible. The court finds that for the purposes of the instant motion, the value of the Property is $1,000,000. Thus the value of the property is less than the amount Debtor owes to Movants, resulting in Debtor's having no equity in the Property.

17.   Debtor filed a Disclosure Statement and a Plan of Reorganization on December 9, 2011 and filed a Supplement to the Disclosure Statement on December 23, 2011. Docket Nos. 70, 71 and 80. The court takes judicial notice of the Disclosure Statement, Supplement and Plan of Reorganization. The proposed plan of reorganization is based upon obtaining a $1,350,000 loan from American First National Bank. The loan is conditioned upon termination of the FMLA. Debtor stipulated before the court and Karaali testified that the Debtor will not seek to reject the FMLA in this case. Consequently, Debtor is unable to fund the plan. Karaali testified that, within the last few years, he attempted to refinance, with at least six banks, but was unsuccessful because the loan was always contingent upon the termination of the FMLA. Testimony of Miller and Karaali.

18.   The proposed plan includes financial projections based upon sales of gas and sales from the convenience store, but the court notes that these projections are not based upon past performance. Movants' Exhibit No. 30. The plan does not provide

8

for the payment of Movants' claim in full and fails to include some expenses, including payroll, payroll or franchise taxes, and the cost of rebranding the gas station.

19.  The record reflects that the Debtor has done nothing to provide Movant with any payments other than turning over $3,200 in cash collateral.  Debtor has failed to provide Movants with any type of adequate protection other than urging the existence of equity in the Property and the hope that Debtor would be able to work out refinancing conditions that did not require termination of the FMLA.

20.  The court finds that Movants are not adequately protected as a result of the lack of any proposal for payment by Debtor, Debtor's failure to turn over cash collateral, Debtor's lack of equity in the property and failure to provide a viable plan of reorganization.  The court finds that the automatic stay should be lifted for cause.

## Conclusions of Law

1.  Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against

property under subsection (a) of this section, if—

> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization;

2.   Section 362(g) of the Bankruptcy Code provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

3.   The term "cause" used in 11 U.S.C. § 362(d)(1) is not defined in the Code and whether cause exists must be determined on a case by case basis.  *See In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986); *In re Robbins*, 964 F. 2d 342 (4th Cir. 1992); *In re Laguna Assoc. Ltd. Partnership*, 30 F.3d 734 (6th Cir. 1994); *In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990).

4.   The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case.  *In re Atlantic Ambulance Associate, Inc.*, 166 B.R. 613 (Bankr. E.D.Va. 1994).

5.   "Equity" as used in Section 362(d)(2) means the difference between the value of the subject property and the encumbrances against it. *Matter of Sutton*, 904 F.2d 327 (5th Cir. 1990).

6.    In a chapter 11 reorganization case, most of the property of the debtor in possession is likely to be "necessary" for the debtor's business and ultimate reorganization. However, it is not sufficient that property be necessary for any possible reorganization.    It must be necessary for an effective reorganization.  This means there "must be a reasonable possibility of a successful reorganization within a reasonable time," and that the property at issue is necessary to that reorganization.  See 3 Collier on Bankruptcy, ¶ 362.07[4](Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375-76 (1987).

Based on the foregoing, the court will enter a separate Judgment lifting the stay to allow Movants to pursue all rights they have in connection with the Property.

SIGNED at Houston, Texas on this 12th day of January, 2012.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE